IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JON BARTLETT,
      Petitioner,

vs.                        Case No.:  5:18cv49/MCR/EMT

WARDEN, FCI MARIANNA,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This case is before the court on Petitioner Jon Bartlett's ("Bartlett") habeas petition and supporting memorandum, filed pursuant to 28 U.S.C. § 2241 (ECF Nos. 1, 2).  Respondent filed a Response contending the petition is subject to dismissal for lack of jurisdiction, because the issue presented in the petition is moot (ECF No. 9). Bartlett filed a Reply contending that the petition is not moot (ECF No. 12).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that the habeas petition should be dismissed for lack of jurisdiction.

I.       BACKGROUND AND PROCEDURAL HISTORY

Bartlett, an inmate of the federal Bureau of Prisons ("BOP"), filed the instant § 2241 petition on February 9, 2018 (ECF No. 1).  Bartlett claims his due process rights were violated when he was convicted of a violation of the institutional rule prohibiting inmates from using alcohol (*see* ECF No. 1 at 3; ECF No. 2 at 2–8). Bartlett alleges on March 11, 2017, BOP staff conducted alcohol testing of all inmates in Bartlett's housing unit to determine if any inmate had violated the BOP's policy forbidding alcohol use (*see* ECF No. 2 at 2).  Bartlett alleges his first Breathalyzer reading registered 0.017, and a second test, conducted 15 minutes later, registered a reading of 0.013 (*id.*).  Bartlett alleges he was placed in disciplinary segregation (*id.*). Bartlett alleges the institutional disciplinary board relied upon pictures of the Breathalyzer readings to find him guilty him of violating institutional policy 6590.07 (*id.* at 4–5).  Bartlett alleges the disciplinary board removed 41 days of "good time" credits and imposed "several other sanctions," including disciplinary segregation (ECF No. 2 at 4).  Bartlett alleges throughout the disciplinary process, he was generally told that he violated the institution's alcohol policy, but he was never notified that the policy required a Breathalyzer reading of 0.02 or higher to warrant disciplinary action (*see* ECF No. 1, attached Institution Supplement, policy number MNA 6590.07C; ECF No. 2 at 4).

Bartlett alleges he did not discover the specifics of the alcohol policy until October 4, 2017, when policy 6590.07 was posted on the institutional bulletin board (ECF No. 2 at 3).  Bartlett alleges within days of the BOP's posting the policy, he filed a formal administrative grievance challenging the disciplinary conviction, but the grievance was denied as untimely (*id.*).  Bartlett alleges he appealed the decision to the BOP's Central Office, but the Central Office denied the appeal (*id.*).

Bartlett contends the BOP violated his constitutional due process rights by arbitrarily taking 41 days of good time credits even though did not violate prison policy (*see* ECF No. 1 at 3; ECF No. 2 at 4–8).  As relief, Bartlett requests restoration of the 41 days of good time credits, and immediate removal of "the remaining sanctions still in effect" (ECF No. 2 at 7–8).

Respondent contends the petition should be dismissed for lack of subject matter jurisdiction because it has been rendered moot (ECF No. 9).  Respondent asserts that the BOP conducted a review of the matter, and on April 4, 2018, expunged the disciplinary/incident report and restored the 41 days of good time credit (*id.* at 1–2).  Respondent submitted a copy of the expunged disciplinary/incident report (ECF No. 9-1) and a report showing that the 41 days of forfeited good time credit were restored on April 4, 2018 (ECF No. 9-2).  Respondent argues that it is not clear what the

alleged "remaining sanctions" are, but any sanctions concerning the disciplinary incident "have now run their course" (ECF No. 9 at 2).

In Bartlett's Reply, Bartlett contends he continues to suffer adverse consequences from the disciplinary conviction, because he is on a "hot list," meaning, he is subject to more frequent alcohol testing than prisoners who were not found guilty of violating the alcohol policy (*see* ECF No. 12 at 3–5).  Bartlett alleges this more frequent testing affects his ability to participate in certain programs and work assignments (*id.*).  Bartlett additionally contends this case qualifies under the "voluntary cessation exception" to the mootness doctrine (*see id.* at 2–5).  Bartlett argues it is Respondent's burden to establish that there is "no reasonable expectation" that prison employees will not wrongfully and arbitrarily punish him again (*id.* at 4–5).

II.    ANALYSIS

It is a basic principle of Article III that a justiciable case or controversy must remain "extant at all stages of review, not merely at the time the [initial pleading] is filed."  Arizonans for Official English v. Arizona, 520 U.S. 43, 67, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997) (internal quotation marks omitted).  "[T]hroughout the litigation," the party seeking relief "'must have suffered, or be threatened with, an

actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" <u>Spencer v. Kemna</u>, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998) (quoting <u>Lewis v. Cont'l Bank Corp.</u>, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).  Mootness is a jurisdictional matter.  *See* <u>United States v. Alaska S.S. Co.</u>, 253 U.S. 113, 116, 40 S. Ct. 448, 64 L. Ed. 808 (1920).

The Supreme Court has been willing to presume that a wrongful <u>criminal conviction</u> has continuing collateral legal consequences.  *See* <u>Spencer</u>, 523 U.S. at 8 (citing <u>Sibron v. New York</u>, 392 U.S. 40, 57, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) (emphasis added).  But the Supreme Court has not been willing to extend the presumption of collateral consequences to habeas challenges to matters other than a criminal conviction.  For example, in <u>Lane v. Williams</u>, 455 U.S. 624, 102 S. Ct. 1322, 71 L. Ed. 2d 508 (1982), petitioner Williams pleaded guilty to burglary and was sentenced to a term of incarceration followed by a term of parole.  455 U.S. at 626. Williams served the incarcerative portion of his sentence and was released on parole, but months later, he was returned to prison as a parole violator.  *Id.* at 626–27. Williams filed a habeas petition alleging that his incarceration violated the Due Process Clause, because he had not been informed, at the time of his guilty plea, that a term of parole would be part of his sentence.  *Id.* at 627.  Williams' habeas petition

did not ask the court to set aside his burglary conviction; rather, it requested an order freeing him from incarceration and from "all future liability" under his original sentence, and it included a general prayer for relief. *Id.* at 627 & n.2. While the case was pending, Williams completely served his sentence. *Id.* at 627–28. The Supreme Court held that the presumption of collateral consequences did not apply, because no civil legal disabilities such as those present in <u>Carafas</u> resulted from a finding that an individual violated parole. 455 U.S. at 632. The Court further held that because petitioner Williams obtained all the relief he sought (i.e., an order releasing him from incarceration and from "all future liability" under his original sentence), no live controversy remained. *Id.* at 633.

In <u>Spencer v. Kemna</u>, petitioner Spencer sought to invalidate an order revoking his parole. 523 U.S. at 3. During the pendency of the habeas case, Spencer completed the entire term of imprisonment underlying the parole revocation, so the Supreme Court considered whether the habeas petition was moot. *Id.* at 8. Adhering to the principles announced in <u>Lane</u>, the Court held that the presumption of collateral consequences did not extend to a challenge to a parole revocation. *Id.* at 14. The Court then considered whether petitioner Spencer satisfied his burden of demonstrating collateral consequences of the revocation of his parole. Spencer

asserted four concrete injuries-in-fact attributable to his parole revocation.  First, he claimed that the parole revocation could be used to his detriment in a future parole proceeding.  The Court rejected this contention, on the ground that the revocation was only one factor, among many, that the parole authority could consider in making a discretionary decision in a future parole proceeding.  *Id.*

Second, Spencer argued that the parole revocation could be used in increase his sentence in a future sentencing proceeding.  523 U.S. at 15.  The Court rejected this claim, because it was contingent upon Spencer's violating the law, getting caught, and being convicted; and that Spencer was able, and indeed required by law, to prevent such a possibility by conducting his activities within the law.  *Id.*

For similar reasons, the Court rejected Spencer's third and fourth contentions; that the parole revocation could be used to impeach him if he appeared as a witness or litigant in a future criminal or civil proceeding, or could be used against him directly if he appeared as a defendant in a criminal proceeding.  523 U.S. at 15–16.  The Court rejected these arguments as based purely on speculation regarding whether such an appearance would occur.  *Id.* at 16.

Federal courts have extended the holdings of <u>Lane</u> and <u>Spencer</u> to prison disciplinary proceedings, thus requiring a petitioner to prove the existence of collateral consequences.  *See* <u>Wilson v. Terhune</u>, 319 F.3d 477, 480–81 (9th Cir. 2003).

When Bartlett filed this habeas action, he requested restoration of the 41 days of good time credits, and immediate removal of "the remaining sanctions still in effect" (ECF No. 2 at 7–8).  The good time credits have now been restored, and the incident report has been expunged from his inmate record.  With regard to the "remaining sanctions," Bartlett states he is considered by the prison to be "a higher risk for recidivism" (ECF No. 12 at 3).  Bartlett also states he is on the prison's "hot list" for more frequent alcohol and drug testing (*id.* at 4).  He contends this affects his ability to secure favorable placement in certain re-entry programs and to work in "trusted positions" within the prison, such as a companion for suicidal prisoners (*id.* at 4–5).

According to the prison's alcohol testing policy, the following inmates are included in the "target population" for alcohol surveillance/testing:

1.    Inmates returning from community activities (furloughs, town trips, etc.).

2.    Inmates suspected of being under the influence of alcohol.  A list of these inmates will be generated by the SIS [Special Investigative Supervisor] Office.  Inmates who receive an incident

report for Code 110, 111, or 209 will be placed on a suspect list for 24 months.

3.      Inmates found guilty of incident report codes 110, 111, or 209.  A roster will be provided by SIS to test for prior use inmates.

4.      Random sampling at the FPC [Federal Prison Camp] will be conducted periodically, to include inmates returning from work details.

5.      Random sampling at the FCI [Federal Correctional Institution] will be conducted on each shift.

6.      Random sampling at the Shawnee [a Unit of FCI Marianna] will be conducted periodically, at the discretion of the Operations Lieutenant.

7.      Inmates assigned to drive a vehicle requiring a commercial driver's license, under FHWA Guidelines, are also subject to alcohol testing.

(*see* ECF No. 1 at 7–10, Institution Supplement, MNA 6590.07C, p. 3).

Petitioner has not shown that since the expungement of the March 11, 2017 incident report, he has been on a "suspect list" or otherwise targeted for testing based upon that report.  And Bartlett's contention that he is considered by the prison to be "a higher risk for recidivism" is too vague to satisfy his burden of showing he suffers collateral legal consequences of the now-expunged disciplinary/incident report. Therefore, the undersigned rejects Bartlett's contention that he suffers "remaining sanctions" or collateral consequences which satisfy the case or controversy

requirement.  *See, e.g.*, Hammoud v. Graber, No. CV 15-8586-AB, 2016 WL
8737296, at *3 (C.D. Cal. Apr. 7, 2016) (unpublished but recognized as persuasive
authority) (holding that habeas petition was moot where federal prisoner challenged
disciplinary determination that caused him to lose good conduct time, but during
pendency of case, BOP re-heard the disciplinary charge, found petitioner guilty of a
less severe violation, restored good conduct time, expunged original incident report,
and imposed a sanction that petitioner had already satisfied), *Report and
Recommendation Adopted by*, 2016 WL 8738139, at *1 (C.D. Cal. July 1, 2016);
Tracy v. Bragg, No. EP-11-CV-252-PRM, 2011 WL 6002626, at *3 (W.D. Tex. Nov.
30, 2011) (holding that habeas petition was moot where federal prisoner challenged
disciplinary determination that caused him to lose good conduct time, but during
pendency of case, BOP restored good conduct time and expunged original incident
report, and petitioner's alleged collateral consequences were too speculative to give
rise to a case or controversy).  *Cf.* Seehausen v. Hood, No. Civ. 02-378-ST, 2002 WL
31006009, at *2 (D. Ore. July 24, 2002) (holding that habeas petition was not moot
where federal prisoner challenged disciplinary decision that caused him to lose good
time credit, because even though BOP restored good time credit, it did not expunge

incident report, and petitioner showed that collateral consequences continued to effect him, which could be cured by expungement).

Bartlett additionally contends this case falls within the exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." Petitioner alleges he qualifies under this exception because he polled certain prison employees regarding their knowledge of the "legal limit" of alcohol permitted by institutional policy, and none of them answered correctly (ECF No. 12 at 4). Bartlett contends this demonstrates that he may be erroneously convicted of violating the policy in the future.

"[T]he capable-of-repetition doctrine applies only in exceptional situations," Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983), "where the following two circumstances [are] simultaneously present:  (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again," Spencer, 523 U.S. at 17–18 (internal quotation marks and citations omitted).  Bartlett's case satisfies neither of these conditions.  He has not shown (and it is doubtful that he could) that the time between

the disciplinary conviction and a favorable administrative decision undoing an erroneous conviction is always so short as to evade judicial review.

Nor has Bartlett demonstrated a reasonable likelihood that he will once again be erroneously convicted of violating the policy.  It appears that the erroneous disciplinary conviction occurred prior to August of 2017 (*see* ECF No. 9, attached Sentence Monitoring Good Time Data reflecting that Petitioner did not receive 41 days of good conduct time from August of 2016 to August of 2017).  Bartlett does not allege he has suffered any erroneous charges or convictions for violations of the prison's alcohol policy since that time.  Moreover, since Bartlett is now aware of the "legal limit" set forth in the prison policy, he may argue it in his defense at any future disciplinary proceeding if his test result is lower than 0.02.  Therefore, Bartlett has failed to carry his burden of showing that his petition qualifies for review under the capable-of-repetition doctrine.

III.    CONCLUSION

This habeas case became moot five months after it was filed, by virtue of Respondent's restoring Bartlett's good time credits and expunging the disciplinary report from Bartlett's inmate file.  Bartlett has not shown he is suffering any collateral consequences from the expunged disciplinary report.  Further, Bartlett has not shown

that his habeas petition qualifies for review under any recognized exception to the mootness doctrine. Therefore, Bartlett's § 2241 petition should be dismissed for lack of jurisdiction.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 1) be **DISMISSED for lack of jurisdiction, because it is moot**.

2.     That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 19th day of July 2018.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No:  5:18cv49/MCR/EMT